UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOVAN WILLIAMS,

      Plaintiff,

v.                                                                       Case No. 20-CV-1266

ALEJANDRA MEJIA,
CO BISHOP,
JOHN DOES,
SCOTT ECKSTEIN,
JOHN KIND, and
JEAN LUTSEY,

      Defendants.

## SCREENING ORDER

Plaintiff Jovan Williams, an inmate confined at Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights while he was incarcerated at Green Bay Correctional Institution. This order resolves Williams' motion for leave to proceed without prepaying the filing fee and screens his complaint.

The court has jurisdiction to resolve Williams' motion to proceed without prepaying the filing fee and to screen the complaint in light of Williams' consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Williams was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 18, 2020, the court ordered Williams to pay an initial partial filing fee of $0.78. (ECF No. 5.) Williams paid that fee on September 14, 2020. The court will grant Williams' motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. **Screening the Complaint**

   *2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Williams' Allegations*

Williams alleges that, on November 27, 2016, defendants CO Bishop and John Doe #1 were handing out medication. Williams says he stopped them, showed them

3

a lot of pills, and then swallowed the pills. Williams allegedly told the officers he was suicidal. According to Williams, Bishop radioed defendant Alejandra Mejia, who arrived at Williams' cell along with defendant John Doe #2. Bishop allegedly told Mejia what happened. She allegedly instructed everyone to walk away from Williams' cell. Williams says he called out to them and told them he had just overdosed and needed to be placed in observation. Williams alleges they all laughed at him and left.

Williams asserts that, under DAI Policy 500.70.248-500.70.25, the defendants should have placed him in observation status. He asserts that the defendants were also required to wait for a supervisor to come before leaving his cell. Williams alleges that, as they walked off, he became extremely dizzy and nauseous, and he repeatedly begged and pleaded to see medical staff or to be sent to the hospital. Meija allegedly responded, "You overdosed as if you want to die, so we are going to let you get your wish." (ECF No. 1 at 6.)

Williams explains that he was in the restrictive housing unit at Green Bay Correctional from 2016 through 2017. He states that, during that time, he overdosed on pills about four times. Williams asserts that he filed numerous inmate complaints about his overdosing and self-harming incidents. According to Williams, defendants Eckstein (who the court believes to be the warden), John Kind (who the court believes to be the security director), and Jean Lutsey (who the court believes to be the health services unit manager) knew that their employees were violating policy and "walking off on Williams without informing [health services] or [psychological services] of his overdoses and self-harming incidents." (ECF No 1 at 7.) Williams asserts that, despite

4

knowing about their employees' misconduct, they failed to correct them or provide additional training.

*2.3 Analysis*

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes preventing inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014).

The Seventh Circuit has recently clarified, however, that the Eighth Amendment does not apply when an inmate who wants attention makes an insincere suicide threat that results in minor injuries that are quickly and easily treated. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). That is because inmates suing for damages under § 1983 must provide evidence of a recoverable injury. *Id*.

"In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages." *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1032 (7th Cir. 2019) (emphasis in original) (internal quotation marks omitted). In other words, an inmate may not recover damages based only on the fact that an official did not immediately respond to a suicide threat. *Lord*, 952 F.3d at 905. To prevail, the inmate must also establish that he suffered an injury as a result of the

5

official ignoring his threat. *Id.*; *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869 at *3-4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present a sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

Williams alleges that defendants Bishop, Mejia, and two John Doe officers walked away and refused to contact health or psychological services after he swallowed pills and told them he needed to be placed on observation status. The court cannot determine from the allegations whether Williams' act of self-harm was a sincere suicide attempt or whether it was intended to manipulate staff or get attention. It also cannot determine whether Williams swallowing an unidentified number of unidentified pills posed a sufficiently serious risk of damage to his health. After all, the complaint merely alleges that Williams ingested "pills," which could include innocuous vitamins or supplements. Accordingly, although Williams' allegations are enough for him to state a claim of deliberate indifference against these defendants, additional information may render his claims untenable.

Williams may also proceed on a claim of deliberate indifference against Eckstein, Kind, and Lutsey. The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to

6

detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Williams alleges that these defendants knew their subordinates were ignoring his and other inmates' threats of self-harm and suicide. This is sufficient to state a claim.

Because Williams is suing Doe defendants, he will have to use discovery to learn their names. After the named defendants respond to his complaint, the court will enter a scheduling order setting a deadline for discovery. At that time, Williams may serve discovery requests on the named defendants to get information or documents that will help him identify the names of the Doe defendants. Once he knows their names, he should promptly notify the court. Williams may not serve discovery requests until *after* the named defendants respond to his complaint and *after* the court enters a scheduling order.

3. Conclusion

**THEREFORE, IT IS ORDERED** that Williams' motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Alejandra Mejia, CO Bishop, Scott Eckstein, John Kind, and Jean Lutsey. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Williams shall collect from his institution trust account the $349.22 balance of the filing fee by

7

collecting monthly payments from Williams' prison trust account in an amount equal to 20% of the preceding month's income credited to Williams' trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Williams is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Williams is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

8

Case 2:20-cv-01266-SCD   Filed 09/18/20   Page 8 of 9   Document 7

Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Williams is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Williams is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Williams' failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Dated at Milwaukee, Wisconsin, this 18th day of September, 2020.

**BY THE COURT:**

_Stephen C. Dries_
STEPHEN C. DRIES
United States Magistrate Judge